## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| FRANK GALLO, | ) | Case No. |
| Plaintiff, | ) ) ) | **COMPLAINT FOR** |
| v. | ) ) | **VIOLATION OF THE** |
| TCF FINANCIAL CORPORATION, | ) ) | **FEDERAL SECURITIES LAWS** |
| GARY TORGOW, THOMAS C. | ) | **JURY TRIAL DEMANDED** |
| SHAFER, VANCE K. OPPERMAN, | ) | |
| DAVID T. PROVOST, PETER BELL, | ) | |
| KAREN L. GRANDSTRAND, | ) | |
| RICHARD H. KING, RONALD A. | ) | |
| KLEIN, BARBARA J. MAHONE, | ) | |
| BARBARA L. MCQUADE, ROGER J. | ) | |
| SIT, JULIE H. SULLIVAN, JEFFREY | ) | |
| L. TATE, ARTHUR A. WEISS, | ) | |
| FRANKLIN C. WHEATLAKE, and | ) | |
| THERESA M.H. WISE, | ) | |
| Defendants. | ) ) | |

Plaintiff Frank Gallo ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action against TCF Financial Corporation ("TCF" or the "Company") and the members of its Board of Directors (the "Board" or the

"Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell TCF to Huntington Bancshares Incorporated ("Huntington") (the "Proposed Transaction").

2.     On December 13, 2020, TCF announced that it had entered into an Agreement and Plan of Merger dated December 13, 2020 (the "Merger Agreement"), pursuant to which each TCF stockholder will receive 3.0028 shares of Huntington common stock for each share of TCF common stock they own.

3.     On February 17, 2021, TCF filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia,* it fails to disclose material information regarding: (i) the projections for each of TCF, Huntington, and the pro forma company and the data and inputs underlying the financial analyses that support the fairness opinion provided by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"); and (ii) the background of the Proposed Transaction.  Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.     The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder

vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  TCF is headquartered in this District.  Moreover, each of

the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of TCF.

9.    Defendant TCF is a Michigan corporation with its principal executive offices located at 333 W. Fort Street, Suite 1800, Detroit, Michigan 48226.  TCF is a financial holding company.  TCF's common stock trades on the Nasdaq Global Select Market under the ticker symbol "TCF."

10.    Defendant Gary Torgow ("Torgow") is Executive Chairman of the Board and has served as a director of the Company since August 1, 2019.

11.    Defendant Thomas C. Shafer serves as Chief Executive Officer ("CEO") of TCF Bank and has served as Vice Chairman of the Board and a director of the Company since October 2020.

12.    Defendant Vance K. Opperman is Lead Independent Director and has served as a director of the Company since August 1, 2019.

13.    Defendant David T. Provost ("Provost") is CEO of the Company and has served as Executive Vice Chairman since August 1, 2019 and a director of the Company since August 31, 2016.

14.     Defendant Peter Bell has served as a director of the Company since August 1, 2019.

15.     Defendant Karen L. Grandstrand has served as a director of the Company since August 1, 2019.

16.     Defendant Richard H. King has served as a director of the Company since August 1, 2019.

17.     Defendant Ronald A. Klein has served as a director of the Company since August 31, 2016.

18.     Defendant Barbara J. Mahone has served as a director of the Company since August 31, 2016.

19.     Defendant Barbara L. McQuade has served as a director of the Company since April 25, 2018.

20.     Defendant Roger J. Sit has served as a director of the Company since August 1, 2019.

21.     Defendant Julie H. Sullivan has served as a director of the Company since August 1, 2019.

22.     Defendant Jeffrey L. Tate has served as a director of the Company since March 1, 2017.

23.     Defendant Arthur A. Weiss has served as a director of the Company since August 31, 2016.

24.     Defendant Franklin C. Wheatlake has served as a director of the Company since January 2006.

25.     Defendant Theresa M. H. Wise has served as a director of the Company since August 1, 2019.

26.     Defendants identified in paragraphs 10-25 are referred to herein as the "Board" or the "Individual Defendants."

27.     Relevant non-party Huntington is a Maryland corporation with its principal executive offices located at 41 South High Street, Columbus, Ohio 43287. Huntington is a multi-state diversified regional bank holding company with a network of 839 full-service branches, including 11 Private Client Group offices, and 1,330 ATMs across seven Midwestern states.  Huntington's common stock trades on the Nasdaq Global Select Market under the ticker symbol "HBAN."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

28.     TCF is a financial holding company incorporated in 1973 and headquartered in Detroit, Michigan.  TCF, formerly known as Chemical Financial Corporation, completed a merger of equals with TCF Financial Corporation, a Delaware corporation on August 1, 2019.  As of September 30, 2020, TCF had total assets of $47.6 billion, and was the 31st largest publicly traded bank holding company in the United States based on total assets at September 30, 2020.

29.     TCF's primary banking subsidiary, TCF National Bank ("TCF Bank" or the "Bank"), is a premier Midwest bank offering consumer and commercial banking, trust and wealth management, and specialty leasing and lending products and services to consumers, small businesses and commercial clients.  Through TCF Bank, TCF provides a full range of consumer-facing and commercial services, including consumer and commercial banking, trust and wealth management, and specialty leasing and lending products and services to consumers, small businesses and commercial customers.  TCF Bank operates banking centers primarily located in Michigan, Illinois, and Minnesota with additional locations in Colorado, Ohio, South Dakota, and Wisconsin.  TCF also conducts business across all 50 states and Canada through its specialty lending and leasing businesses.

30.     On January 22, 2021, TCF announced its fourth quarter 2020 financial results.  For the quarter, quarterly net income was $91.4 million, or $0.58 per diluted share, a 63.9% increase from the third quarter of 2020.  Net interest income was $381.4 million, compared to $377.2 million in the third quarter of 2020.  Adjusted diluted earnings per common share was $0.75, a 19.0% increase from the third quarter of 2020.  Defendant Provost commented on the financial results, stating:

> The fourth quarter was highlighted by strong momentum across the bank which helped drive higher loan and lease balances, increased revenues, net interest margin expansion, and strong capital ratios, all of which position us well as we prepare to complete our announced merger with Huntington in the second quarter of 2021.  We believe this merger will benefit our key stakeholders through leading market share in top

Midwest markets, increased scale, a broader product set, enhanced technology capabilities and investments, and significant earnings per share accretion.  As we look forward to the closing of the merger, our focus over the next several months will be on taking care of our team members, serving both our consumer and commercial customers, and growing the business.

31.    On December 13, 2020, TCF and Huntington issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> COLUMBUS, Ohio and DETROIT, Dec. 13, 2020 -- Huntington Bancshares Incorporated ("Huntington") (Nasdaq: HBAN; www.huntington.com), the parent company of The Huntington National Bank, and TCF Financial Corporation ("TCF") (Nasdaq: TCF; www.tcfbank.com), the parent company of TCF National Bank, today announced the signing of a definitive agreement under which the companies will combine in an all-stock merger with a total market value of approximately $22 billion to create a top 10 U.S. regional bank with dual headquarters in Detroit, Michigan and Columbus, Ohio.
>
> The combined company will bring together two purpose-driven organizations with a deep commitment to the customers and communities they serve.  With a rich history of caring for customers and colleagues, the new organization will have a top 5 rank in approximately 70% of its deposit markets and will leverage its scale to serve customer needs through a distinctive, "People-First, Digitally-Powered" customer experience.
>
> Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, TCF will merge into Huntington, and the combined holding company and bank will operate under the Huntington name and brand following the closing of the transaction.  Upon closing, Stephen D. Steinour will remain the chairman, president, and CEO of the holding company and CEO and president of the bank.  Gary Torgow will serve as chairman of the bank's board of directors.

"This merger combines the best of both companies and provides the scale and resources to drive increased long-term shareholder value. Huntington is focused on accelerating digital investments to further enhance our award-winning people-first, digitally powered customer experience," Steinour said.  "We look forward to welcoming the TCF Team Members.  Together we will have a stronger company better able to support our customers and drive economic growth in the communities we serve."

The headquarters for the Commercial Bank will be in Detroit where at least 800 employees of the combined company, nearly three times the number TCF had planned, will be housed in the downtown structure. Columbus will remain the headquarters for the holding company and the Consumer Bank.

"This partnership will provide us the opportunity for deeper investments in our communities, more jobs in Detroit, an increased commitment in Minneapolis and a better experience for our customers," Torgow said.  "We will be a top regional bank, with the scale to compete and the passion to serve.  Merging with the Huntington platform will be a great benefit to all of our stakeholders and will drive significant opportunities for our team members."

The pro forma combined company will have approximately $168 billion in assets, $117 billion in loans, and $134 billion in deposits.  The combined organization will significantly improve Huntington's market position, increase scale and provide greater revenue growth opportunities.  The company is expected to extend its top quartile financial metrics after completion of the integration.

Huntington expects the financially compelling transaction to be 18% accretive to earnings per share in 2022, assuming the fully phased-in transaction cost synergies.  The merger uniquely positions the combined organization to capitalize on market opportunities and broaden the channels and customers it serves through expanded distribution and product offerings.

## **Strategic and Financial Benefits of the Proposed Merger**

- **Enhanced Profitability and Scale**: The combined company's expanded distribution and scale positions Huntington to serve an expanded customer base through a distinctive customer experience while driving top-quartile financial performance.

- **Significant Cost Synergies**: Estimated cost savings of the combined company are approximately $490 million, or 37% of TCF's noninterest expense.

- **Revenue Growth through Combined Segments and Expanded National Footprint Businesses**: The combined company will strengthen its Consumer, Wealth, Business Banking, and Commercial businesses.  Huntington will leverage its broader product and services offering, as well as its award-winning digital capabilities, across the expanded combined customer base.  In addition, TCF operates national inventory and equipment finance businesses, which will complement Huntington's existing commercial efforts.

- **Strengthened Market Position**: The combined company will maintain its leading market position with the largest branch share and second position in Consumer Deposits in the footprint.  The combination expands the Huntington footprint to include Minnesota, Colorado, Wisconsin, and South Dakota, and deepens its presence in Chicago.

- **Strong Brand and Cultural Alignment**: The combined company expands the reach of Huntington's "Welcome" culture and enriches an inclusive, diverse, high-performing team.

- **Community Commitment**: Huntington will contribute $50 million to a donor advised fund at the Community Foundation for Southeast Michigan to serve the needs of communities in Detroit and across the footprint of the combined bank.  This donor advised fund will be in addition to commitments already made by both banks, including a combined $10 million to Detroit's Strategic Neighborhood Fund.  The combined company also will remain committed to Minneapolis, where TCF was founded nearly a century ago. Huntington and TCF have

consistently earned "Outstanding" ratings under the Community Reinvestment Act.  Huntington recently announced a $20 billion Community Plan, which is focused on driving economic inclusion through access to capital, affordable housing and home ownership, and community lending and investment.  $5 billion is specifically dedicated to Michigan.  The most recent component of the Community Plan is "Huntington's Lift Local Business" which provides much-needed capital to local minority, woman and veteran-owned businesses, as well as giving customers access to business planning and educational programs to support local businesses.  TCF also recently announced a $1 billion commitment over five years to support minority-owned and women-owned small businesses, which will be added to Huntington's commitment.  Huntington is the #1 SBA Lender in the nation for loan origination, and this merger will provide expanded opportunity to bring that expertise to a larger, combined footprint.

**Board of Directors**

At closing, five current TCF Directors will be added to the Board of Directors of the holding company.  David L. Porteous will serve as Lead Director of the holding company's Board of Directors and the bank's Board of Directors.

**Timing and Approvals**

The merger is expected to close in the second quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**The Proxy Contains Material Misstatements or Omissions**

32.    On February 17, 2021, defendants filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince TCF's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the

omission of critical information concerning: (i) the projections for each of TCF, Huntington, and the pro forma company and the data and inputs underlying the financial analyses that support the fairness opinion provided by KBW; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning Financial Projections for TCF, Huntington, and the Pro Forma Company and KBW's Financial Analyses***

33.     The Proxy omits material information regarding financial projections for TCF, Huntington, and the pro forma company.

34.     The Proxy sets forth that in connection with KBW's discounted cash flow analyses for each of TCF, Huntington, and the pro forma entity, KBW utilized the "estimated excess cash flows that [TCF, Huntington, and the pro forma combined entity] could generate over the period from June 30, 2021 through December 31, 2026." Proxy at 82-83.  The Proxy, however, fails to disclose the estimated excess cash flows that each of TCF, Huntington, and the pro forma combined entity could generate from June 30, 2021 through December 31, 2026.

35.     The Proxy also omits material information concerning KBW's financial analyses.

36.     The Proxy describes KBW's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of KBW's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, TCF's public

stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on KBW's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37.    With respect to KBW's *TCF Selected Companies Analysis* and *Huntington Selected Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by KBW.

38.    With respect to KBW's *Selected Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by KBW.

39.    With respect to KBW's *Relative Contribution Analysis*, the Proxy fails to disclose and quantify the following items for each of TCF and Huntington used in the analysis: (i) Gross Loans Held for Investment; (ii) Deposits; (iii) Tangible Common Equity; (v) 2020-2022 Earnings; and (vi) 2021-2022 Pre-Tax, Pre-Provision Earnings.

40.    With respect to KBW's *Financial Impact Analysis*, the Proxy fails to disclose: (i) the specific accretion/dilution figures resulting from the analysis; (ii) the pro forma assumptions (including, without limitation, the cost savings and related expenses expected to result from the merger and certain other earnings adjustments, accounting adjustments and restructuring charges assumed with respect thereto) provided by Huntington management and utilized by KBW; and (iii)

Huntington's tangible common equity to tangible assets ratio, Leverage Ratio, Common Equity Tier 1 Ratio, Tier 1 Capital Ratio and Total Risk-based Capital Ratio at closing as of June 30, 2021.

41.     With respect to KBW's *Huntington Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the estimated excess cash flows that Huntington could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company; (ii) Huntington's 2026 earnings; (iii) Huntington's implied terminal value; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%.

42.     With respect to KBW's *TCF Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the estimated excess cash flows that TCF could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company; (ii) TCF's 2026 earnings; (iii) TCF's implied terminal value; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 13.0%.

43.     With respect to KBW's *Pro Forma Combined Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the estimated excess cash flows that the pro forma combined entity could generate over the period from June 30, 2021 through December 31, 2026; (ii) the pro forma combined entity's 2026 earnings; (iii) the implied terminal values for the pro forma combined entity; (iv) the estimated cost savings and related expenses, other earnings adjustments, accounting adjustments and

restructuring charges used in the analysis; and (v) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%.

44.     Without such undisclosed information, TCF stockholders cannot evaluate for themselves whether the financial analyses performed by KBW were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which KBW's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

45.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Opinion of TCF's Financial Advisor" and "Certain Unaudited Prospective Financial Information."

**Material Omissions Concerning the Background Leading to the Proposed Transaction**

46.     The Proxy fails to disclose material information concerning the background of the Proposed Transaction.

47.     The Proxy sets forth that:

Also on November 30, 2020, the TCF Board held a meeting. . . . A KBW representative discussed certain preliminary financial observations, the transactional landscape in the banking industry and other potential strategic alternatives for TCF, including the universe of

other potential acquirors and merger partners.

*Id.* at 67.  Yet, the Proxy fails to disclose: (i) the details of the other potential strategic alternatives for TCF, including the potential acquirors or merger partners discussed by the KBW representative; and (ii) whether the Board considered the potential strategic alternatives and whether to contact any of the potential acquirors or merger partners.

48.    Additionally, the Proxy sets forth that Huntington's November 16, 2020 proposal contemplated the potential to include cash for up to 10% of the total consideration.  *Id.* at 66.  The Proxy fails to set forth when Huntington removed the option to include cash for up to 10% of the total consideration, as well as any Board discussions regarding the cash option.

49.    Moreover, the Proxy fails to disclose the timing and nature of all communications between Huntington and TCF's executive officers and directors regarding the employment agreements Huntington and certain TCF officers executed and the change-in-control payments TCF's officers stand to receive in addition to their continued employment with the combined company.

50.    Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders.  This information is necessary for TCF's shareholders to understand potential conflicts of interest of management and the Board, as that

information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

51.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Merger" and "Interests of TCF's Directors and Executive Officers in the Merger."

52.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

55.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.

The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the projections for each of TCF, Huntington, and the pro forma company utilized by KBW in its financial analyses, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by KBW, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

56.    The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

57.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

58.    Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

59.    Plaintiff repeats all previous allegations as if set forth in full.

60.    The Individual Defendants acted as controlling persons of TCF within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of TCF, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

61.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

63.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, TCF's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of TCF, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed

Transaction, unless and until defendants disclose and disseminate the material information identified above to TCF stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 11, 2020                                   **WEISSLAW LLP**

By   */s/ Richard A. Acocelli*
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL**

**BRAGAR EAGEL & SQUIRE, P.C.**

Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*